**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| GARY KEARNEY | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | COMPLAINT AND |
| | ) | JURY TRIAL DEMAND |
| HOME DEPOT USA, INC.; | ) | |
| KEVIN P. FUCICH LLC | ) | |
| d/b/a FALCON SECURITY; and | ) | |
| POINT 2 POINT GLOBAL | ) | |
| SECURITY, INC. | ) | |
| | ) | COLLECTIVE ACTION |
| Defendants | ) | |

Plaintiff GARY KEARNEY, on behalf of himself and the other members of the collective set forth herein, hereby alleges as follows:

**THE PARTIES**

1.     GARY KEARNEY is an individual of the full age of majority.  He lives in Venice, Florida, and is a resident and domiciliary of the State of Florida.

2.     Defendant HOME DEPOT USA, INC., is a Delaware corporation licensed to do business in Louisiana and doing business in Louisiana.  Its principal business establishment within this State is located at 4600 Highway 22, Suite 9, Mandeville, Louisiana.  HOME DEPOT USA, INC. is hereinafter referred to as "Home Depot."

3     Defendant KEVIN P. FUCICH LLC, is a Louisiana limited liability company with its registered mailing address within this state located at 620 Tchoupitoulas St., New Orleans, Louisiana. On information and belief, that address is the residence of Kevin Fucich, the sole member of KEVIN P. FUCICH LLC.

4.      Defendant KEVIN P. FUCICH, LLC, does business under the trade name "Falcon Security Company," and is hereinafter referred to as "Falcon Security."

5.      Defendant POINT 2 POINT GLOBAL SECURITY, INC. is a California corporation licensed to do business in Louisiana and doing business in Louisiana.  Its principal business establishment in Louisiana is located at 501 Louisiana Avenue, Baton Rouge, Louisiana.  POINT 2 POINT GLOBAL SECURITY, INC. is hereinafter referred to as "Point 2 Point."

## JURISDICTION AND VENUE

6.      This Complaint is brought pursuant to the Fair Labor Standards Act ("FLSA"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      The Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Kevin Fucich, who is the sole member of KEVIN P. FUCICH LLC, resides within this District.  Thus, KEVIN P. FUCICH LLC is a resident of this district for purposes of personal jurisdiction and venue.

9.      All Defendants regularly transact business within this District and are subject to personal jurisdiction here.

10.     Venue is proper in this Court.  28 U.S.C. § 1391.

11.     The transactions and occurrences alleged herein involved actions in Louisiana, Florida, and Georgia, and therefore constitute interstate commerce.

12.     Each Defendant is regularly engaged in commerce pursuant to 29 U.S.C. § 206(s).

13.     Each Defendant's annual volume of sales made and business done exceeded $500,000 during 2016.

## FACTUAL ALLEGATIONS

14.     In early October 2016, Hurricane Matthew approached the eastern coast of Florida and

Georgia as a category 4 hurricane.

15.     Home Depot operates retail stores throughout the country, including approximately ten retail stores within this District.  It also operates several stores near the eastern coast of Florida and Georgia.

16.     In advance of Hurricane Matthew's anticipated landfall, Home Depot required a significant influx of security guards in Florida and Georgia to assist in securing the stores and controlling the large crowds that were expected as a result of the storm and its aftermath.

17.     In light of the oncoming natural disaster, Home Depot was operating on an emergency basis and time was of the essence.  Home Depot's contemporaneous press release boasted that it was "working around the clock" to prepare for the oncoming hurricane.

18.     Point 2 Point similarly states that it "has a wide range of experience in providing security services after natural disasters including hurricanes, floods, and tornadoes," and offers a "24-Hour Command Center" in connection with its Disaster Relief and Recover services.

19.     Falcon Security entered into a contract with Home Depot and/or Point 2 Point, to provide additional emergency security staffing for the Home Depot retail stores affected by Hurricane Matthew.

20.     In October 2016, Plaintiff Kearney learned that Falcon Security was seeking to hire several temporary security guards to help secure the Home Depot retail stores on the east coast of Florida.

21.     Kearney is a registered Security Officer in the state of Florida, license no. D 1530773.

22.     Kearney contacted a Falcon Security dispatcher to in quire about employment and was told that he was on the clock, and should report to the Home Depot store in Melbourne, Florida.  He drove to the Melbourne Home Depot on October 7, 2016.

23.     Kearney was informed that his regular hourly rate would be $20 per hour.

24.     Upon reaching the Melbourne Home Depot, Kearney learned that there were sufficient security guards staffing the Melbourne store.  He was then told to report to the Home Depot in New Smyrna Beach, Florida.

25.     Upon arriving in New Smyrna, Kearney was assigned a partner and immediately began working.  He was told that at least two guards must remain on duty at all times, and that he would be relieved when additional guards arrived.

26.     Despite this promise, Kearney spent more than four full days without any relief. Although his partner changed several times, Kearney was required to remain on the premises.

27.     Defendants did not provide Kearney with a hotel room or other accommodations. Instead, when he was able to sleep, he had to sleep in his car, where he took short naps of fifteen to thirty minutes.

28.     Kearney was never allowed to sleep through the night, as Defendants required him to wake up frequently to check the perimeter of the store and ensure there had been no break-ins.

29.     Defendants did not provide Kearney with any food, but some individual Home Depot workers brought him food from their own homes.  If not for their generosity, Plaintiff would have had nothing to eat while at the New Smyrna store.

30.     Kearney was required to remain on the Home Depot premises at all times and was not permitted to leave to engage in personal activities.

31.     As a security guard, one of the primary benefits which Kearney provided to Home Depot was his constant presence on the premises – both to deter potential thieves, and to rapidly respond to any sudden crisis.  There was no available backup for Kearney to call so that he could take a break when he needed one.

32.     At one point, Kearney was told that Falcon Security had secured a hotel room in nearby Daytona, Florida, and that he could go there to take a nap.  When he arrived at the Daytona hotel,

Kearney discovered that there were already six other security guards in the room.  Kearney was unable to sleep in these conditions and, after showering and cleaning up, he returned to New Smyrna.

33.     Including travel time, Kearney spent less than three hours driving to Daytona, showering, changing, and returning to New Smyrna.  This was the only "break" he was afforded while he was working for Defendants.

34.     Other than that single trip to Daytona, Defendants told Kearney that he was required to remain on the Home Depot premises 24 hours a day.

35.     Defendants further informed Kearney that, even while he was sleeping, he remained "on call" at all times.

36.     Kearney was provided with a Falcon Security timesheet and job application, which he completed and returned.

37.     Plaintiff left the New Smyrna Home Depot on October 12, 2016 and returned home.

38.     Plaintiff worked well in excess of forty hours during the workweek that he was employed by Defendants.  He was therefore eligible for overtime premiums pursuant to 29 U.S.C. § 207.

39.     Defendants failed to pay Plaintiff for all hours worked, including overtime premiums for hours worked beyond forty in a workweek.

40.     To this day, Defendants have not paid Kearney any of the wages he is owed.

41.     Plaintiff has repeatedly made demands upon Falcon Security for payment of the unpaid wages, to no avail.

## COLLECTIVE ACTION CLAIMS

42.     Plaintiff brings this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all other current and former similarly situated employees who worked for Defendants as security guards during Hurricane Matthew.

43.     The FLSA collective is defined as:

> All individuals employed by Kevin P. Fucich, LLC (d/b/a "Falcon
> Security"), Point 2 Point Global Security, Inc. or Home Depot USA, Inc.,
> as security guards working at Home Depot retail stores in Florida or
> Georgia during the October 2016 landfall of Hurricane Matthew.

44.     Defendants' failure to pay statutorily mandated minimum wage and overtime pay to the

members of the collective constitutes a common practice, policy, or plan to deny overtime in violation

of the FLSA.

45.     Plaintiff is similarly situated to the remaining members of the collective, who have all

been denied minimum wage and overtime premiums despite working more than 40 hours in a week.

46.     Plaintiff and the other members of the collective have repeatedly made demands upon

Defendants for payment of their unpaid wages, to no avail.

47.     Defendants were joint employers of the Plaintiff and other members of the collective.

48.     Defendants jointly set the terms and conditions of employment for Plaintiff and other

members of the collective.

49.     Defendants jointly assigned the Plaintiff and other members of the collective to the

relevant Home Depot retail stores.

50.     Defendants had the right to direct and control the work of Plaintiff and other members of

the collective, and did in fact direct and control that work.

51.     Plaintiff and the other members of the collective were required to complete Falcon

Security timesheets.  Defendants are in possession of those timesheets but refuse to pay Plaintiff and

the members of the collective for the hours worked as set forth therein.

52.     Plaintiff requests that, at the soonest practicable time, the Court order that notice be

given to the remaining members of the collective so that they may exercise their right to opt in to this

action.

**FIRST CAUSE OF ACTION**

**FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 206-207)**

**AGAINST ALL DEFENDANTS**

53.     Plaintiff hereby realleges and reincorporates paragraphs 1-52.

54.     The FLSA requires that employers pay nonexempt employees a minimum wage of at least $7.25 per hour, plus an overtime premium at a rate of at least one and one-half times their regular rate, for all hours over forty in a workweek.

55.     Defendants have not paid Plaintiff any of the wages due to them, including overtime premiums for hours worked over forty in a workweek.

56.     Defendants have not paid the remaining members of the collective any of the wages due to them, including an overtime premium for hours worked over forty in a workweek.

57.     Defendants had actual and constructive knowledge that Plaintiff and the remaining members of the collective worked more than 40 hours in a week.

58.     Defendants' nonpayment of minimum wage and overtime was willful and not based in a good faith belief that their conduct was in accordance with the law.

59.     Plaintiff and the other members of the collective have therefore been damaged in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**UNJUST ENRICHMENT/QUANTUM MERUIT**

**AGAINST ALL DEFENDANTS**

60.     Plaintiff hereby realleges and reincorporates paragraphs 1-59.

61.     Defendants have not paid Plaintiff and the other members of the collective for all hours worked under forty in a workweek, known as "straight time" or "gap time."

62.     Plaintiff and the members of the collective were informed and understood that they

would be paid at the rate of $20 per hour for this time.

63.     Payment for those hours was duly earned by Plaintiff and the members of the collective, but has not been paid.  Defendants' failure to pay for this labor has unjustly enriched them and impoverished Plaintiff and the members of the collective.

64.     There is no justification for Defendants' unlawful actions, and Plaintiffs have no other adequate remedy at law for Defendants' nonpayment of the straight time or gap time hours.

65.     Defendants' unlawful actions have injured Plaintiff and the members of the collective in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**LOUISIANA WAGE PAYMENT ACT**

**(AGAINST FALCON SECURITY ONLY)**

66.     Plaintiff hereby realleges and reincorporates paragraphs 1 through 65.

67.     Falcon Security failed to pay Plaintiff and the members of the collective all sums owed to them within 15 days after the end of their employment.

68.     Plaintiff and the members of the collective have repeatedly demanded payment of their wages from Falcon Security, but have still not received the money owed to them.

69.     Falcon Security's actions violate the Louisiana Wage Payment Act, La. Rev. Stat. § 23:632, and Plaintiff and the members of the collective are entitled to 90 days' penalty wages along with reasonable attorneys' fees.

**JURY DEMAND**

70.     Plaintiff hereby requests a trial by jury.

**WHEREFORE**, Plaintiff and the members of the collective respectfully pray for judgment as follows:

> a.     That this case be allowed to proceed as a collective action;
>
> b.     For an award of all unpaid wages, minimum wage, and overtime according to

proof;

c.      For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

d.      For an award of reasonable attorney's fees;

e.      For costs of suit;

f.      For an award of penalties pursuant to La. Rev. Stat. § 23:632;

g.      For injunctive and equitable relief as provided by law;

h.      For pre and post-judgment interest; and

i.      For such other and further relief as may be just and proper.

Respectfully Submitted,


_____/s Charles J. Stiegler___
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
6557 West End Blvd.
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com


Justin Chopin, # 31100
CHOPIN LAW FIRM LLC
650 Poydras St., Suite 1550
New Orleans, La. 70130
(504) 323-5755 (telephone)
(504) 324-0640 (fax)
Justin@ChopinLawFirm.com